UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHRISTINA SOSTRE,

         Plaintiff,     **COMPLAINT**

   -against-         **JURY TRIAL DEMANDED**

MERMAID CHELSEA, LLC., CINDY SMITH
AND DANNY ABRAMS,

         Defendants,

-------------------------------------------------------------------X

## JURISDICTION AND VENUE

1.  This action arises under federal law, including Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000(e) et seq. ("PDA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000ff et seq. ("PWFA"). Additionally, this action asserts claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, New York State Labor Law ("NYLL") § 215 and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.

2.  This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as these claims arise under the laws of the United States, including Title VII, the ADA, and the PWFA. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391, as Defendants conduct business in New York County, New York, Plaintiff performed work within Defendants' facility in New York County, New York, and a substantial part of events or omissions giving rise to the claim occurred in New York County, New York.

## THE PARTIES

4.  Plaintiff Christina Sostre ("Plaintiff") or ("Plaintiff Sostre") Or ("Ms. Sostre") resides at 2372 Brookhaven Ave, Far Rockaway, NY 11691.

5. Defendant Mermaid Chelsea, LLC ("Defendant Mermaid LLC") or ("Mermaid LLC") is a business located at 227 10th Avenue, Mermaid Chelsea, LLC, New York, NY, United States, 10011.

6. On information and belief, Defendant Danniel Abrams, hereinafter ("Defendant Abrams") or ("Mr. Abrams"), is an individual residing in the State of New York. Defendant Abrams is one of the owners and Chief Executive Officer of The Mermaid Chelsea, LLC, located at 227 10th Avenue, New York, NY 10011, United States.

7. On information and belief, Defendant Cindy Smith, hereinafter ("Defendant Smith") or ("Ms. Smith"), is an individual residing in the State of New York. Defendant Smith is one of the owner of The Mermaid Chelsea, LLC, located at 227 10th Avenue, New York, NY 10011, United States.

8. During any period of time whatsoever during the six years immediately preceding the filing of this Plaintiff, Mermaid LLC performed one or more of the following actions: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rates of certain employees of Premier Home Health, (4) maintain payroll records for certain employees, or (5) institute work rules for certain employees.

9. During any period of time whatsoever during the six years immediately preceding the filing of this Plaintiff, Defendant Abrams performed one or more of the following actions: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rates of certain employees of Premier Home Health, (4) maintain payroll records for certain employees, or (5) institute work rules for certain employees.

10. During any period of time whatsoever during the six years immediately preceding the filing of this Plaintiff, Defendant Smith performed one or more of the following actions: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rates of certain employees of Premier Home Health, (4) maintain payroll records for certain employees, or (5) institute work rules for certain employees.

11. Defendant Mermaid LLC, Defendant Abrams, and Defendant Smith will hereby be referred to jointly as ("Defendants") unless otherwise noted.

## BACKGROUND FACTS

12. Defendants employed Plaintiff Sostre as a W2 non-exempt wage earner on or around March 26, 2022

13. Defendants hired Plaintiff Sostre as a waitress, where her responsibilities included greeting customers, taking food and drink orders, relaying those orders to the kitchen or bar, serving

2

food and beverages, answering questions about the menu, making menu recommendations when requested, processing payments, and ensuring tables were cleared and cleaned after use.

14. Plaintiff Sostre stopped working for the Defendants on or around January 6, 2023.

15. Throughout Plaintiff's tenure of employment, she did not have the power to hire, fire, direct the workforce, set wage rates, discipline, or control any other terms or conditions of employment.

16. At all relevant times, Defendants employed over 50 employees.

17. Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC) on July 18, 2024.

18. Plaintiff Sostre was paid $15.00 per hour, consisting of $10 in cash and $5 in tip credits, with weekly payments.

19. Plaintiff's work schedule was Monday to Friday, from 5:00 PM to 12:00 AM, totaling approximately 35 hours per week.

20. Defendants operate approximately four locations in New York, including branches in Upper West Side, Chelsea, Times Square, and Greenwich Village.

21. Defendants hired Plaintiff Sostre as a waitress at the Chelsea location, located at 227 10th Ave, New York, NY 10011, where she worked from March 26, 2022, until early December 2022.

22. In December 2022, Plaintiff Sostre requested a transfer to the Times Square location at 127 West 43rd Street, New York, NY 10036 before her termination.

23. Plaintiff Sostre consistently received positive recognition for her service at Mermaid LLC. Client feedback praised her

**PLAINTIFF MEDICAL HISTORY**

24. Plaintiff Christina Sostre suffers from severe asthma, a lifelong medical condition that has worsened with age and is further aggravated by environmental triggers such as allergies. This condition requires ongoing medical care and has been consistently documented by her medical providers.

25. Plaintiff has had asthma since birth. Her condition has been monitored regularly due to the detection of multiple nodules in her lungs during a CAT scan in 2020, with the largest nodule measuring 5 mm.

26. Plaintiff's asthma was noted as a serious condition, affecting her ability to breathe normally, and she regularly uses Albuterol and other medications to manage her symptoms. Additionally, a spirometry test indicated a submaximal effort, further confirming her respiratory issues.

27. In her daily life and at work, Plaintiff relies on various medications prescribed by her doctors, including Albuterol HFA inhalers, nebulizer treatments, and Asmanex HFA for long-term asthma management.

28. Plaintiff frequently suffers from asthma attacks that can leave her bedridden for hours or even days due to the severity of her respiratory issues, preventing her from performing basic daily activities. During these episodes, she often cannot leave her home to avoid being disconnected from her nebulizer.

29. Plaintiff's prescriptions also included medications to treat respiratory-related infections and inflammation, demonstrating the seriousness of her condition. Medical documentation from 2022 further substantiates her need for these medications.

**RETALIATION FOR LAWFUL ABSENCES: DEFENDANTS' PATTERN OF HOSTILITY AND UNLAWFUL CONDUCT TOWARD PLAINTIFF**

30. Plaintiff Sostre was subjected to a hostile work environment during her entire tenure of employment with Defendant Mermaid LLC.

31. On April 14, 2022, less than a month after being hired, Plaintiff Sostre was summoned for trial jury service in Queens County, New York. She immediately notified her manager, Anastasia, who was the manager at the Chelsea location, that she would begin jury duty the following day.

32. Upon receiving the summons, Plaintiff Sostre served as a juror in Queens County for eight days on the following dates: April 18, 2022; April 19, 2022; April 20, 2022; April 21, 2022; April 25, 2022; April 26, 2022; April 27, 2022; and April 28, 2022, as confirmed by the juror's proof of service certificate signed by Ms. Audry Pheffer, Commissioner of Jurors at that time.

33. During her jury service, Plaintiff Sostre received multiple calls and text messages from her manager, Anastasia, who persistently asked for additional documentation to support her jury duty claim. Despite having notified Anastasia immediately upon receiving the notice, Anastasia continued to call, even during Plaintiff's time as a juror, inquiring about her whereabouts and repeatedly requesting further proof of her service. Ms. Sostre explained several times that she had already provided all the available documentation and had no additional documents.

34. Upon returning to work on April 28, 2022, Plaintiff Sostre sensed a change in the atmosphere

between her and her manager, Anastasia.

35. This was not the first time Anastasia had pressured Plaintiff Sostre over matters beyond her control.

36. In or around mid-May 2022, while serving a table that had ordered oysters, Plaintiff Sostre approached a member of the kitchen staff and inquired about the dish after noticing a change. The kitchen crew confirmed that the oysters had been updated to a seasonal item.

37. Plaintiff Sostre had not been informed of any changes to the menu, nor had she been provided with a copy of the new menu by her manager, Anastasia, unlike other employees who had received it upon the update.

38. Plaintiff Sostre continued to distribute the previous physical menus that were available in the restaurant, as she had received no instructions from her superiors indicating that the menus had been updated or should no longer be used.

39. Nevertheless, Plaintiff Sostre remained professional and chose not to address Anastasia's behavior with other employees at Defendant Mermaid LLC.

40. In another instance, on June 8, 2022, Plaintiff Sostre injured her leg when she tripped over a metal plate on the ground at approximately 12:03 AM. The plate had been left on the sidewalk outside her home by Con Edison[1] workers, with no warning cones or tape to alert passersby of the hazard. Plaintiff fell on her knee, which immediately swelled. Due to the severity of the swelling, she sought medical attention at urgent care the following morning.

41. Plaintiff Sostre went to CityMD[2] the same day, where Dr. Ilaint Aminow treated her. Although no severe injury was diagnosed, due to the swelling and pain, Ms. Sostre was given a medical excuse from work from July 8, 2022, to July 9, 2022.

42. Plaintiff Sostre promptly informed her manager, Anastasia, about the injury and the medical leave. However, Anastasia's only response was to request the doctor's paperwork, showing no concern or empathy for Plaintiff's condition.

43. Plaintiff Sostre's leg injury did not improve, and the pain became unbearable, making it difficult for her to perform basic tasks, such as walking. As a result, Plaintiff requested

---

[1] Consolidated Edison, Inc. (commonly known as Con Edison or ConEd) is one of the largest investor-owned energy companies in the United States. It provides electric, gas, and steam services to New York City and Westchester County customers.

[2] CityMD is a chain of urgent care centers across New York, offering walk-in services for a wide range of non-emergency medical needs. Established to provide accessible care, CityMD offers services such as treatment for illnesses and minor injuries, X-rays, lab tests, and vaccinations.

additional days off for recovery. She returned to work on June 11, 2022.

44. Upon arriving at the workplace on June 11, 2022, Plaintiff Sostre was immediately approached by her manager, Anastasia, who instructed her to take a surprise test on a new menu. Plaintiff explained that she had not been provided the new menu during her absence for jury duty and requested to take the test the following day or during her next shift to adequately prepare.

45. Manager Anastasia refused Plaintiff Sostre's request to delay the test, stating, "No, do your best." Plaintiff attempted the test but scored only 35%. She explained to Anastasia that her low score was due to her unfamiliarity with the new menu, which had neither been provided to her nor explained as to when it would become effective, since the restaurant was still using the previous physical menu at that time.

46. In response, Anastasia provided Plaintiff with the new menu and study materials, offering her the opportunity to retake the test at a later date and initially expressing support.

47. However, this support lasted only a few hours. At the end of the same shift, Anastasia gathered all employees for a team meeting. During the meeting, she publicly singled out Plaintiff Sostre, stating, "If you don't want this job, don't waste your time here. There are other people who want your job." Anastasia continued to undermine Plaintiff, saying, "People are scoring 35% on their tests, and that tells me they don't want their job." It was evident that she was referring to Plaintiff Sostre, as she was the only employee who had received that score. To conclude, Anastasia added, "If you think having doctor's notes means you can't be fired, understand that you still can be." This comment was clearly aimed at Plaintiff, who had recently been absent due to a medically excused injury.

48. Plaintiff Sostre felt humiliated by this unprovoked and unwelcome public reprimand. Despite Anastasia's earlier words of support in private, she made it clear in front of the entire staff that her remarks were directed at Ms. Sostre. Rather than using the meeting to improve staff performance, Anastasia's statements served as a direct warning to Plaintiff.

49. Plaintiff Sostre had two additional absences in June On June 20, 2022, Plaintiff suffered an asthma attack in the early hours of the morning, which required her to use her nebulizer overnight to control her symptoms. Plaintiff notified her manager, Anastasia, of the situation at 6:38 AM, requesting time off to recover. Anastasia responded at 6:45 AM, granting Plaintiff's request for the day. Plaintiff had provided ample notice of her condition, and her asthma episode was clearly documented in text message communications with her supervisor. Plaintiff had called out nearly 10 hours before her scheduled shift began.

50. The second absence occurred on June 26, 2022, when a family emergency required Plaintiff to care for her son. On that day, Plaintiff made several attempts to contact the restaurant to notify

her manager, Michael, but received no response until an hour and 40 minutes before her shift, when Michael finally responded using his personal phone.

51. In both instances, Plaintiff Sostre notified her supervisor well in advance of her scheduled shifts, on June 20 with over 10 hours' notice and on June 26 with more than two hours' notice. To date, all of Plaintiff's absences had been due to emergencies or situations beyond her control.

52. On July 4, 2022, after Plaintiff Sostre had been feeling unwell with flu-like symptoms, she took a PCR test for COVID-19. The following day, she was notified that the test result was positive. Plaintiff received an official Affirmation of Quarantine from the New York State Department of Health, which required her to quarantine from July 5 to July 11, 2022, due to the positive result.

53. The effects of COVID-19 were severe for Plaintiff, as her respiratory issues were further complicated by her asthma.

54. Plaintiff promptly informed her manager, Anastasia, and another manager, Michael, of her condition and provided them with her expected return date. Despite this, Anastasia repeatedly contacted Plaintiff during her quarantine, even requesting that she come to work, despite knowing that Plaintiff had tested positive for COVID-19.

55. Plaintiff's COVID-19 symptoms persisted beyond the mandated quarantine period. On July 11, 2022, Plaintiff informed her manager, Anastasia, that she was still feeling unwell and experiencing lingering COVID-19 symptoms. She requested a few additional days to recover, as her health had not yet improved.

56. Plaintiff Sostre returned to work on July 12, 2022, after completing her required COVID-19 quarantine. However, on that same day, her health had not improved, and she experienced significant difficulty breathing due to the combined effects of COVID-19 and her asthma. Plaintiff spoke with her manager, Michael, requesting to leave early to rest at home and recover.

57. A day after returning from quarantine on July 13, 2022, Plaintiff was summoned to Anastasia's office. Present in the office were Anastasia and her boyfriend, Bernardo, who served as the Head Chef. Anastasia informed Plaintiff that she was initiating a disciplinary process against her, citing alleged violations of the company's code of conduct, specifically related to her recent absences, despite the fact that her COVID-19 infection caused these absences and were in full compliance with the quarantine requirements.

58. This situation surprised Plaintiff Sostre, as several of the alleged violations were based on her

justified absences. According to the company's call-out policy, which required employees to notify management at least two hours before their shift, Anastasia explained that Plaintiff had failed to comply on June 20 and June 26, 2022.

59. Plaintiff Sostre immediately reminded Anastasia that she had requested time off for those two days due to an asthma attack and a family emergency, which were reported in compliance with company policy. She had informed the company well in advance, on June 20 with more than 10 hours notice and on June 26 with more than two hours notice, although her manager, Michael, only responded an hour and forty minutes before her shift.

60. Plaintiff Sostre explained her situation to her manager, stating in her own words, "Ana [referring to Anastasia], I didn't miss work because I wanted to. Everything has really gotten out of my hands. First, it was the jury duty, and the rest were medical emergencies. If you're talking about June 26, it was just one day, and I had to pick up my son."."

61. Despite Plaintiff's explanation and ability to provide supporting text messages, Anastasia dismissed her justifications. Anastasia stated that this was not a negotiation or trial, and the decision had already been made. Plaintiff was allowed to comment on the report but was told that the decision was final.

62. Anastasia further minimized the seriousness of Plaintiff's asthma condition, stating, "I don't even know if that was true," despite her knowledge of Plaintiff's severe asthma and its triggers.

63. Both Anastasia and Michael, were well aware of Plaintiff's severe asthma condition, as she had frequently needed to bring her inhalers and, on some occasions, her nebulizer to work. Plaintiff Sostre refused to sign the disciplinary document, asserting that the process was unfair, as both instances involved emergencies, and management had been properly informed. Despite her refusal, Anastasia signed the document as her manager, and Bernardo, the head cheff and Anastasia's boyfriend signed as a witness.

64. After that incident, Plaintiff Sostre began to overhear comments from other servers like Jennifer Burry, who stated that Anastasia was suggesting that she was pretending to suffer from asthma to miss work.

65. Plaintiff Sostre requested a statement from her doctor to provide official documentation of her asthma condition and delivered to Anastasia.

66. On September 27, 2022, Plaintiff Sostre requested leave from her manager, Anastasia, via text message, to attend the funeral service of her best friend, Kimberly Gonzales, who had passed away on September 25, 2022. The funeral was scheduled for September 29, 2022.

67. On or around October 3, 2022, Plaintiff Sostre attempted to return to work but discovered that

she had been completely removed from the schedule on the 7shifts app for the period of October 3 to October 7, 2022.

68. Concerned about her employment status, Plaintiff Sostre texted Anastasia to ask if she had been fired. Anastasia's response was vague and dismissive, stating, "No, you are not. I wouldn't do it this way. I'm not sure why your shift for tomorrow is up for grabs. I thought you did it."

69. Despite acknowledging that Plaintiff had valid reasons for her absences, Anastasia informed Plaintiff that she had only been given one shift for the following week, without providing a clear explanation as to why her hours were drastically reduced.

70. Before requesting leave to attend her best friend's funeral, Plaintiff Sostre worked consistently six days a week. However, after returning to work on October 10, 2022, her hours were significantly cut without further explanation. From October 3 through November 28, 2022, Plaintiff was reduced to working only one day a week, despite her valid reasons for her previous absences. Manager Anastasia provided no additional reasoning for the cut, leaving Plaintiff as the only employee subjected to such a drastic reduction in hours. In contrast, others continued to work full schedules at Defendants' restaurant, Mermaid LLC.

71. In stark contrast, during October 2022, Defendants hired approximately four new servers who were immediately given full-time schedules, working Monday through Friday, while Plaintiff, despite her extensive experience and consistently positive performance reviews, was relegated to just one day per week. No legitimate reason was provided for this disparate treatment, singling Plaintiff out despite her qualifications and proven dedication.

72. This sudden and unjust reduction in Plaintiff's work hours caused a significant financial burden. Having previously worked six days a week, the drastic cut to two days and then to only Mondays led to a severe decrease in her income.

73. Facing financial strain due to this discriminatory treatment, Plaintiff Sostre had no choice but to request a transfer to Defendants' newly opened Times Square location. Her supervisor, Anastasia, begrudgingly approved the transfer, offering little explanation for the reduction in her hours.

74. On December 5, 2022, Plaintiff began working at the Times Square location, where she was finally given a full schedule of four days per week, from Monday through Thursday, working from 5:00 PM until 12:00 Midnight. However, by that time, Plaintiff had already suffered weeks of financial and emotional distress due to the Defendants' unjust actions.

75. On December 19, 2022, Plaintiff had missed work due to the death of her grandmother. She provided Seline, her manager at the Times Square location, with a funeral letter stamped by

the funeral home to excuse her absence.

## PREGNANCY DISCRIMINATION AND WRONGFUL TERMINATION.

76. On the morning of December 29, 2022, Plaintiff began experiencing symptoms that made her suspect she was pregnant. She decided to take a pregnancy test to confirm her condition.

77. After taking a pregnancy test, Plaintiff Sostre received a positive result.

78. Plaintiff scheduled a doctor's appointment for January 6, 2023, to confirm her pregnancy and begin necessary prenatal care.

79. On the afternoon of December 29, 2022, at approximately 4:45 PM, Plaintiff informed her manager, Seline, of her pregnancy. Plaintiff also mentioned that she might need to take time off for a medical appointment on January 6, 2023.

80. Seline reacted uncomfortably to Plaintiff's pregnancy announcement and did not congratulate her. Instead, she responded curtly, stating, "Let me know how it goes," before walking away.

81. On January 6, 2023, at approximately 5:00 PM, Plaintiff attended her first medical appointment. Her doctor, Dr. Wendy Morosco, scheduled additional tests and issued a medical leave certificate, granting Plaintiff time off from January 6, 2023, to January 11, 2023, for necessary prenatal care.

82. Plaintiff immediately forwarded the medical leave documentation to her managers via text to justify her absence. At 5:40 PM, Plaintiff submitted a letter through the 7shifts app detailing her need for leave from January 6, 2023, to January 11, 2023.

83. At 5:47 PM, Plaintiff received an email notifying her that her work schedule had been removed for the week of January 9, 2023, to January 15, 2023. Concerned, Plaintiff texted her manager, Anastasia, asking if the removal was an error, but received no response.

84. At approximately 6:00 PM, Plaintiff received a call from Andre, another manager, informing her that she was being laid off effective immediately. When Plaintiff inquired about the reason for her termination, Andre stated that she could potentially return in March 2023 when the brunch season resumed. Plaintiff requested written confirmation of her layoff, and Andre agreed.

85. At 6:06 PM, Andre texted Plaintiff asking for her updated address to mail her final paycheck. Plaintiff responded that she would come to the restaurant the following day to collect it.

86. On January 7, 2023, Plaintiff arrived at the restaurant to collect her paycheck and termination

letter. Upon arrival, she noticed a training session for new servers, with approximately 9 to 11 participants present.

87. Plaintiff went to the office, where she found Defendants Smith and Abrams. As they were the owners, Ms. Sostre asked for an explanation regarding her termination. Defendant Smith confronted her, asking, "Didn't you miss work yesterday?" Plaintiff explained that she had missed work due to a prenatal appointment. In response, Defendant Smith stated, "We terminated you because you also missed work in December 2022."

88. Defendant Smith reiterated, "I don't know what you expect us to do; I have a business to run, and I don't believe you." Smith then demanded that Plaintiff leave the office. Before leaving, Plaintiff asked about her unemployment letter, and Defendant Abrams responded, "Tomorrow."

**FIRST CAUSE OF ACTION**
(Discrimination-Pregnancy)
(42 .S.C. §§ 2000 (e) (k) *et seq*-PDA)

89. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

90. The provisions of the Pregnancy Discrimination Act (PDA) apply to the Defendants and protect Plaintiff from discriminatory actions based on pregnancy.

91. Under the PDA, it is unlawful for an employer to discriminate against an employee on the basis of pregnancy, childbirth, or related medical conditions.

92. Plaintiff was pregnant in 2022 and 2023 while employed by Defendants and, at all relevant times, was qualified to perform her job. Prior to revealing her pregnancy, Plaintiff had no disciplinary actions or write-ups.

93. After Plaintiff informed Defendants of her pregnancy, Defendants began to subject her to discriminatory treatment.

94. Defendants failed to accommodate Plaintiff's medical needs, including medical leave required for prenatal care, even after she provided documentation from her doctor.

95. Defendants treated Plaintiff less favorably than similarly situated employees who were not pregnant. Plaintiff was disciplined for alleged infractions that other employees routinely committed without facing any consequences.

96. After Plaintiff requested medical leave for her pregnancy and informed Defendants about her upcoming prenatal appointments, she was removed from the work schedule without

11

explanation. Defendants did not restore her full work schedule, instead reducing her shifts drastically without reason.

97. On January 6, 2023, Plaintiff attended a medical appointment to begin prenatal care and provided Defendants with the necessary medical leave documentation. Shortly after, Defendants terminated her employment.

98. Defendants' termination of Plaintiff's employment was a direct result of her pregnancy and medical needs associated with it, constituting discrimination under the Pregnancy Discrimination Act.

**SECOND CAUSE OF ACTION**
(Failure to Accommodate-Pregnancy)
(42 .S.C. §§ 2000 (e) (k) *et seq*-PDA)

99. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

100. The provisions of the Pregnancy Discrimination Act (PDA) apply to the Defendants and protect Plaintiff from discriminatory actions related to pregnancy, childbirth, or related medical conditions.

101. Under the PDA, women affected by pregnancy, childbirth, or related medical conditions must be treated the same as other employees who are not pregnant but are similar in their ability or inability to work.

102. Defendants violated the PDA by failing to provide reasonable accommodations for Plaintiff related to her post-pregnancy medical needs, specifically the need to express breast milk upon returning to work.

103. Despite numerous requests, Defendants failed to implement or offer a procedure to accommodate Plaintiff's need to express breast milk after returning from her pregnancy leave.

104. Plaintiff requested the temporary accommodation of working from home following her pregnancy leave due to mechanical issues with her car. She expressed her concern about carrying a breast pump and cooler for breast milk on public transportation, given that Defendants had not provided a suitable plan for her to express milk at the office.

105. Defendants ignored Plaintiff's reasonable requests for accommodations and failed to engage in an interactive process to address her needs.

106. Defendants had previously allowed non-pregnant employees, who suffered from disabilities, to work from home as an accommodation. However, they denied Plaintiff the same

accommodation despite her post-pregnancy medical needs.

107. Defendants terminated Plaintiff's employment after she requested the temporary accommodation of working from home to express milk until her car was repaired.

108. Defendants' failure to accommodate Plaintiff's medical needs related to her pregnancy and postpartum care constituted discrimination under the Pregnancy Discrimination Act

**THIRD CAUSE OF ACTION**
(Hostile Work Environment-Pregnancy)
(42 .S.C. §§ 2000 (e) (k) *et seq*-PDA)

109. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

110. The provisions of the Pregnancy Discrimination Act (PDA) apply to the Defendants and protect Plaintiff from being subjected to a hostile work environment due to pregnancy.

111. Under the PDA, it is unlawful for an employer to subject an employee to a hostile work environment because of pregnancy, childbirth, or related medical conditions.

112. Defendants created a hostile work environment for Plaintiff by engaging in severe and pervasive conduct after Plaintiff revealed her pregnancy.

113. Defendants withheld a merit-based increase in Plaintiff's compensation, which she had previously earned, solely after Plaintiff disclosed that she was pregnant.

114. Defendants failed to consider Plaintiff's pregnancy-related medical conditions, including edema, morning sickness, and false labor contractions, when disciplining her, despite being aware of these issues.

115. Plaintiff was subjected to disciplinary actions for alleged infractions that were common among her colleagues, yet she was the only employee penalized for such infractions after disclosing her pregnancy.

116. Defendants failed to investigate or respond to Plaintiff's June 5, 2023, email in which she formally complained of pregnancy discrimination, thereby perpetuating the hostile work environment.

117. Defendants further exacerbated the hostile work environment by mandating that Plaintiff return to the office five days per week, without considering her post-pregnancy medical needs or her need to express breast milk, despite Plaintiff's requests for accommodation.

118. Defendants ultimately terminated Plaintiff's employment after she requested to work from

home to accommodate her need to express breast milk post-pregnancy, despite Plaintiff making it clear that she could perform the essential functions of her job from home.

119. Defendants' conduct significantly altered the terms and conditions of Plaintiff's employment by denying her the ability to work from home, while other similarly situated employees were permitted to do so. Upon termination, Plaintiff lost her wages, health insurance, and other benefits on the day she was supposed to return to work following her pregnancy leave.

### FOURTH CAUSE OF ACTION
(Retaliation-Pregnancy)
(42 U.S.C. §§ 2000 (e) (k) *et seq*-PDA)

120. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

121. The provisions of the Pregnancy Discrimination Act (PDA) apply to Defendants and protect Plaintiff from retaliation for asserting her rights related to pregnancy, childbirth, or related medical conditions.

122. Under the PDA and the relevant provisions of Title VII, it is unlawful for an employer to retaliate against an employee for engaging in protected activity, such as requesting accommodations or raising complaints regarding pregnancy discrimination.

123. Plaintiff engaged in protected activity when she complained to Defendants on June 5, 2023, via email, specifically stating, "I feel like I am being discriminated against because I am pregnant."

124. Plaintiff engaged in protected activity on May 31, 2023, when she requested reasonable accommodations for her pregnancy-related conditions.

125. Plaintiff further engaged in protected activity on August 17, 2023, when she emailed Defendants requesting an accommodation to work from home so she could continue performing her job while pumping breast milk on time as needed. Plaintiff communicated that it was essential for her to pump breast milk regularly and that working from home would allow her to meet this need "in the comfort of [her] own home with her newborn."

126. Defendants retaliated against Plaintiff by failing to investigate or respond to her June 5, 2023, complaint of pregnancy discrimination. Instead of addressing her concerns, Defendants ignored Plaintiff's request for a fair and proper resolution.

127. Defendants further retaliated against Plaintiff by placing her on a written warning, which stated that upon her return from FMLA leave, she would be placed on a "performance improvement plan." The written warning also conveyed that Plaintiff would be required to report to the

corporate office five days per week, stating that remote work was "not a viable option."

128. Defendants escalated their retaliatory conduct by terminating Plaintiff's employment after she requested to work from home to express milk after her pregnancy. Despite Plaintiff making it clear that she could perform the essential functions of her job from home, Defendants unjustly terminated her.

129. Defendants' retaliatory actions were a direct response to Plaintiff's requests for pregnancy-related accommodations and her complaints of discrimination, constituting a violation of the Pregnancy Discrimination Act and Title VII.

130. As a result of Defendants' retaliatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and hardship.

## SIXTH CAUSE OF ACTION
(Discrimination)
(The Americans with Disabilities Act ("ADA") 42 U.S.C §1211(b)(5)(a))

131. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

132. Under the Americans with Disabilities Act (ADA), it is unlawful for an employer to discriminate against an employee based on a disability, including conditions related to pregnancy that may qualify as a disability.

133. Plaintiff's pregnancy-related medical conditions, including but not limited to edema, morning sickness, and the need to express breast milk, constituted disabilities under the ADA, as they substantially limited one or more of her major life activities.

134. Despite being aware of Plaintiff's medical conditions and need for accommodations, Defendants discriminated against Plaintiff by treating her less favorably than other employees who did not suffer from pregnancy-related conditions or disabilities.

135. Defendants subjected Plaintiff to adverse employment actions, including reducing her work hours, failing to accommodate her need for periodic rest breaks, and ultimately terminating her employment, all of which were motivated by her pregnancy-related medical conditions.

136. Defendants further failed to engage in the required interactive process to explore reasonable accommodations for Plaintiff's disabilities, instead retaliating against her for requesting such accommodations.

15

## SEVENTH CAUSE OF ACTION
(Hostile work environment)
(The Americans with Disabilities Act ("ADA") 42 U.S.C §1211(b)(5)(a))

137. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

138. Under the Americans with Disabilities Act (ADA), it is unlawful for an employer to subject an employee to a hostile work environment based on their disability or perceived disability.

139. Plaintiff's pregnancy-related medical conditions, including but not limited to edema, morning sickness, and the need to express breast milk, constituted disabilities under the ADA, as they substantially limited one or more of her major life activities.

140. Defendants created a hostile work environment for Plaintiff by subjecting her to pervasive and severe conduct related to her pregnancy and disability. This included repeated refusals to accommodate her medical needs, such as periodic rest breaks and her request to work from home to express breast milk.

141. Defendants further isolated and targeted Plaintiff by imposing unfair disciplinary actions and reducing her work hours, while similarly situated employees without disabilities were not subjected to the same treatment.

142. The hostility Plaintiff experienced was compounded by Defendants' failure to engage in an interactive process to address her accommodation requests, and by their retaliation following her complaints of discrimination.

143. Defendants' conduct was severe enough to alter the terms and conditions of Plaintiff's employment, creating a hostile and abusive working environment based on her pregnancy-related disabilities.

## EIGHTH CAUSE OF ACTION
(Retaliation)
(The Americans with Disabilities Act ("ADA") 42 U.S.C §1211(b)(5)(a))

144. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

145. Under the Americans with Disabilities Act (ADA), it is unlawful for an employer to retaliate against an employee for requesting accommodations or for engaging in protected activities related to their disability.

146. Plaintiff's pregnancy-related medical conditions, which constituted disabilities under the ADA, required reasonable accommodations, such as periodic rest breaks and the ability to

express breast milk.

147. Plaintiff engaged in protected activity by requesting accommodations for her medical needs and by complaining to Defendants about the lack of support and discriminatory treatment she experienced as a result of her pregnancy-related conditions.

148. In response to Plaintiff's requests for accommodations and complaints of discrimination, Defendants engaged in retaliatory conduct, including but not limited to reducing Plaintiff's work hours, subjecting her to unwarranted disciplinary actions, and refusing to accommodate her needs to express breast milk or take rest breaks.

149. Defendants further retaliated against Plaintiff by terminating her employment after she requested reasonable accommodations and raised concerns about the hostile treatment she experienced due to her medical conditions.

150. Defendants' retaliatory actions were directly related to Plaintiff's requests for accommodations and her complaints about the discriminatory treatment she was subjected to as a result of her disabilities.

151. As a result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## NINTH CAUSE OF ACTION
Discrimination
(Pregnant Workers Fairness Act, 42 U.S.C. § 2000ff et seq.)

152. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

153. Under the Pregnant Workers Fairness Act (PWFA), it is unlawful for an employer to discriminate against an employee on the basis of pregnancy, childbirth, or related medical conditions by failing to provide reasonable accommodations unless doing so would impose an undue hardship on the business.

154. Plaintiff, as a pregnant employee, was entitled to reasonable accommodations under the PWFA, including periodic rest breaks, time off for medical appointments, and the ability to express breast milk after childbirth.

155. Defendants were aware of Plaintiff's pregnancy and the related medical conditions she experienced, including morning sickness, edema, and the need to express breast milk postpartum.

156. Despite this knowledge, Defendants discriminated against Plaintiff by failing to provide

reasonable accommodations for her pregnancy-related conditions. Defendants refused Plaintiff's requests for periodic rest breaks, time off for medical appointments, and accommodation to express breast milk at work or from home.

157. Defendants treated Plaintiff less favorably than similarly situated employees who did not have pregnancy-related conditions, subjecting her to disciplinary actions and reduced work hours, and ultimately terminating her employment.

158. Defendants' refusal to accommodate Plaintiff's pregnancy-related needs, as well as their adverse actions against Plaintiff, constitute unlawful discrimination under the PWFA.

159. As a result of Defendants' discriminatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## TENTH CAUSE OF ACTION
Retaliation
(Pregnant Workers Fairness Act, 42 U.S.C. § 2000ff et seq.)

160. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

161. Under the Pregnant Workers Fairness Act (PWFA), it is unlawful for an employer to retaliate against an employee for requesting accommodations related to pregnancy, childbirth, or related medical conditions.

162. Plaintiff engaged in protected activity under the PWFA when she requested reasonable accommodations for her pregnancy-related conditions, including requests for periodic rest breaks, time off for medical appointments, and the ability to express breast milk.

163. In response to Plaintiff's protected activity, Defendants retaliated against her by reducing her work hours, issuing unwarranted disciplinary actions, and ultimately terminating her employment.

164. Defendants failed to engage in a meaningful interactive process to determine reasonable accommodations for Plaintiff's pregnancy-related needs, instead taking retaliatory actions that negatively affected Plaintiff's employment.

165. Defendants' termination of Plaintiff's employment occurred shortly after Plaintiff's requests for pregnancy-related accommodations, further demonstrating that the termination was in direct retaliation for Plaintiff's protected activity.

166. Defendants' retaliatory actions violated the PWFA and caused Plaintiff significant harm, including economic losses, emotional distress, and other damages.

18

## ELEVENTH CAUSE OF ACTION
(Discrimination - Pregnancy)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

167. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

168. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to discriminate against an employee on the basis of pregnancy, childbirth, or related medical conditions.

169. Plaintiff, as a pregnant employee, was entitled to reasonable accommodations for her pregnancy-related conditions, including time off for medical appointments, periodic rest breaks, and accommodations to express breast milk.

170. Defendants were aware of Plaintiff's pregnancy and related medical conditions, including edema, morning sickness, and her need to express breast milk after childbirth.

171. Despite this knowledge, Defendants discriminated against Plaintiff by failing to provide reasonable accommodations for her pregnancy-related conditions. Defendants denied her requests for rest breaks, time off for medical appointments, and the ability to express breast milk at work or from home.

172. Defendants also treated Plaintiff less favorably than similarly situated employees who were not pregnant, by subjecting her to disciplinary actions, reducing her work hours, and ultimately terminating her employment.

173. Defendants' failure to accommodate Plaintiff's pregnancy-related medical needs and their adverse treatment of Plaintiff constitute unlawful discrimination under NYSHRL.

174. As a result of Defendants' discriminatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## TWELFTH CAUSE OF ACTION
(Retaliation – Pregnancy)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

175. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

176. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to retaliate against an employee for engaging in protected activities, such as requesting reasonable accommodations or complaining about discriminatory treatment.

177. Plaintiff engaged in protected activity under the NYSHRL when she requested reasonable accommodations for her pregnancy-related conditions, including requests for time off, rest breaks, and the ability to express breast milk.

178. Plaintiff further engaged in protected activity when she complained to Defendants about the discriminatory treatment she experienced due to her pregnancy-related conditions.

179. In response to Plaintiff's requests and complaints, Defendants engaged in retaliatory actions, including reducing her work hours, issuing unwarranted disciplinary actions, and ultimately terminating her employment.

180. Defendants' termination of Plaintiff's employment shortly after her requests for accommodations and complaints of discrimination was a direct act of retaliation in violation of the NYSHRL.

181. Defendants' retaliatory actions caused Plaintiff significant harm, including economic losses, emotional distress, and other damages.

## THIRTEENTH CAUSE OF ACTION
(Hostile Work Environment – Pregnancy)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

182. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

183. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to subject an employee to a hostile work environment based on pregnancy or a related medical condition.

184. Plaintiff's pregnancy and her need for reasonable accommodations constituted protected characteristics under the NYSHRL.

185. Defendants subjected Plaintiff to a hostile work environment by engaging in severe and pervasive conduct related to her pregnancy and medical conditions. This conduct included repeatedly denying Plaintiff's requests for reasonable accommodations, such as time off for medical appointments, rest breaks, and the ability to express breast milk.

186. Defendants further isolated Plaintiff by issuing unwarranted disciplinary actions, reducing her work hours without explanation, and failing to investigate or address her complaints of pregnancy discrimination.

187. Defendants' actions created a work environment that was hostile, abusive, and altered the conditions of Plaintiff's employment, particularly after she disclosed her pregnancy.

188. The hostile work environment persisted when Defendants retaliated against Plaintiff for requesting reasonable accommodations and for raising complaints about her discriminatory treatment, culminating in her termination.

189. As a result of Defendants' creation of a hostile work environment, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## FOURTEENTH CAUSE OF ACTION
(Disability Discrimination)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

190. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

191. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to discriminate against an employee based on disability, which includes pregnancy-related medical conditions that may substantially limit one or more major life activities.

192. Plaintiff experienced pregnancy-related medical conditions, including edema, morning sickness, and the need to express breast milk, which qualify as disabilities under the NYSHRL.

193. Defendants were aware of Plaintiff's medical conditions and her need for reasonable accommodations, such as time off for medical appointments, periodic rest breaks, and the ability to express breast milk.

194. Despite being aware of these conditions, Defendants discriminated against Plaintiff by failing to accommodate her disability-related medical needs and treating her less favorably than other similarly situated employees without disabilities.

195. Defendants subjected Plaintiff to adverse employment actions, including but not limited to reducing her work hours, imposing unwarranted disciplinary measures, and ultimately terminating her employment, all of which were based on her pregnancy-related disabilities.

196. Defendants' actions in failing to provide reasonable accommodations and in treating Plaintiff adversely because of her disabilities constitute unlawful disability discrimination under the NYSHRL.

## FIFTEENTH CAUSE OF ACTION
(Retaliation – Disability)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

197. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

198. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to retaliate against an employee for requesting accommodations related to a disability or for complaining about discriminatory treatment based on a disability.

199. Plaintiff engaged in protected activity under the NYSHRL when she requested reasonable accommodations for her pregnancy-related disabilities, including time off, periodic rest breaks, and the ability to express breast milk.

200. Plaintiff further engaged in protected activity when she complained to Defendants about the discriminatory treatment she experienced due to her pregnancy-related disabilities.

201. In response to Plaintiff's requests for accommodations and complaints about discrimination, Defendants retaliated against her by reducing her work hours, issuing unwarranted disciplinary actions, and eventually terminating her employment.

202. Defendants' termination of Plaintiff's employment shortly after her requests for disability-related accommodations and complaints of discrimination constitutes unlawful retaliation in violation of the NYSHRL.

203. As a result of Defendants' retaliatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

### SIXTEENTH CAUSE OF ACTION
(Hostile Work Environment – Disability)
(New York State Human Rights Law, N.Y. Exec. Law § 296)

204. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

205. Under the New York State Human Rights Law (NYSHRL), it is unlawful for an employer to subject an employee to a hostile work environment based on a disability.

206. Plaintiff's pregnancy-related medical conditions constituted disabilities under the NYSHRL, as they limited her ability to engage in major life activities.

207. Defendants created a hostile work environment by subjecting Plaintiff to severe and pervasive conduct related to her disabilities. This included repeatedly denying her requests for reasonable accommodations and imposing disciplinary actions while ignoring her medical needs.

208. Defendants also isolated Plaintiff by reducing her work hours, failing to engage in an interactive process to accommodate her disabilities, and refusing to investigate or address her complaints about discriminatory treatment.

209. The hostile work environment culminated in Plaintiff's wrongful termination after she requested reasonable accommodations for her disabilities and complained about the discriminatory treatment she endured.

210. Defendants' conduct altered the terms and conditions of Plaintiff's employment, making her work environment abusive and intolerable due to their hostility toward her disability-related needs.

211. As a result of the hostile work environment created by Defendants, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

### SEVENTEENTH CAUSE OF ACTION
(Discrimination – Disability)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

212. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

213. Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to discriminate against an employee based on a disability, including pregnancy-related conditions that qualify as disabilities.

214. Plaintiff's pregnancy-related medical conditions, such as edema, morning sickness, and the need to express breast milk, constitute disabilities under the NYCHRL, as they interfere with her ability to perform major life activities.

215. Defendants were aware of Plaintiff's medical conditions and her need for reasonable accommodations, including periodic rest breaks, time off for medical appointments, and the ability to express breast milk.

216. Defendants failed to provide these reasonable accommodations, despite Plaintiff's requests and the clear need for accommodations to manage her pregnancy-related disabilities.

217. Defendants also treated Plaintiff less favorably than similarly situated employees without disabilities by subjecting her to adverse employment actions, including disciplinary measures, reducing her work hours, and ultimately terminating her employment.

218. Defendants' conduct constitutes unlawful disability discrimination under the NYCHRL, which provides broader protections than state or federal law, requiring that accommodations be provided unless they pose an undue hardship.

219. As a result of Defendants' discriminatory actions, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## EIGHTEENTH CAUSE OF ACTION
(Retaliation – Disability)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

220. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

221. Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to retaliate against an employee for requesting reasonable accommodations for a disability or for complaining about discriminatory treatment.

222. Plaintiff engaged in protected activity under the NYCHRL when she requested reasonable accommodations for her pregnancy-related disabilities, including rest breaks, time off for medical appointments, and the ability to express breast milk.

223. Plaintiff further engaged in protected activity when she complained to Defendants about the discriminatory treatment she experienced based on her pregnancy-related disabilities.

224. In response to Plaintiff's requests and complaints, Defendants engaged in retaliatory actions, including reducing her work hours, subjecting her to unwarranted disciplinary actions, and eventually terminating her employment.

225. Defendants' retaliatory conduct, including Plaintiff's termination, occurred shortly after her requests for accommodations and complaints of discrimination, making it clear that the termination was a direct result of her protected activity.

226. Defendants' actions constitute unlawful retaliation under the NYCHRL, which prohibits retaliation for any effort to secure accommodations for a disability or to oppose discrimination.

227. As a result of Defendants' retaliatory actions, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## NINETEENTH CAUSE OF ACTION
(Hostile Work Environment – Disability)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

228. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

229. Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to subject an employee to a hostile work environment based on a disability or perceived disability.

230. Plaintiff's pregnancy-related medical conditions constituted disabilities under the NYCHRL, as they affected her ability to engage in major life activities.

231. Defendants created a hostile work environment by subjecting Plaintiff to pervasive and severe conduct due to her disabilities. This conduct included refusing to provide reasonable accommodations for her medical needs, such as rest breaks and time to express breast milk.

232. Defendants isolated Plaintiff, imposed unwarranted disciplinary actions, and reduced her work hours, all while ignoring her need for accommodations and failing to address her complaints of discrimination.

233. The hostile work environment escalated when Defendants terminated Plaintiff after she requested accommodations and raised complaints about discriminatory treatment.

234. Defendants' actions were so severe and pervasive that they altered the conditions of Plaintiff's employment, making her work environment abusive and intolerable due to their hostility toward her disabilities.

235. As a result of the hostile work environment created by Defendants, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

**TWENTIEH CAUSE OF ACTION**
(Retaliation)
(The New York Labor Law ("NYLL") §215)

236. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

237. The anti-retaliation protections of New York Labor Law (NYLL) § 215, along with its supporting regulations, apply to the Defendants and protected Plaintiff from adverse actions in response to her accommodation requests and workplace complaints.

238. Throughout her employment, Plaintiff requested multiple accommodations related to her pregnancy and medical conditions. In June 2022, Plaintiff suffered an asthma attack and faced a family emergency, both of which required time off. She promptly notified her manager of these emergencies well in advance of her scheduled shifts. In July 2022, Plaintiff tested positive for COVID-19 and provided a quarantine certificate from the New York Department of Health. Despite this, her manager Anastasia repeatedly pressured her to return to work early, even though Plaintiff was legally required to quarantine.

239. In December 2022, Plaintiff informed her manager, Seline, of her pregnancy and requested time off for essential prenatal care, including a scheduled appointment on January 6, 2023. She provided documentation to support her need for these appointments and medical leave.

240. In response to these lawful and necessary requests for accommodations, Defendants retaliated against Plaintiff by taking adverse employment actions. After Plaintiff requested time off in

October 2022 to attend her friend's funeral and manage her pregnancy-related medical needs, Defendants drastically reduced her work hours, cutting her schedule from six days per week to only one day. Despite Plaintiff's extensive experience and positive performance reviews, she was singled out for this reduction, while other employees retained their full schedules. Defendants also unjustly subjected Plaintiff to heightened scrutiny, placing her on a performance improvement plan after she requested accommodations, and disciplining her for infractions that other employees routinely committed without consequence.

241. The retaliation culminated in January 2023, when Defendants terminated Plaintiff's employment. This termination occurred shortly after Plaintiff informed Defendants of her pregnancy, requested medical leave for prenatal appointments, and submitted documentation supporting her medical needs. Despite Plaintiff's repeated efforts to clarify her employment status, Defendants failed to provide any legitimate justification for her termination and ignored her complaints. The termination was a clear act of retaliation for Plaintiff exercising her rights under the New York Labor Law by requesting necessary accommodations for her health and pregnancy.

242. By engaging in these retaliatory actions, Defendants knowingly and intentionally violated NYLL § 215 and its supporting regulations, which prohibit employers from retaliating against employees who engage in protected activities, such as requesting accommodations and making complaints about workplace conditions.

## TWENTY-FIRST  CAUSE OF ACTION
(Discrimination – Pregnancy)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

243. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

244. Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to discriminate against an employee based on pregnancy, childbirth, or related medical conditions.

245. Plaintiff was pregnant and experienced pregnancy-related medical conditions, including morning sickness, edema, and the need to express breast milk postpartum.

246. Defendants were aware of Plaintiff's pregnancy and related medical needs, and Plaintiff requested reasonable accommodations, including time off for medical appointments, periodic rest breaks, and accommodations to express breast milk.

247. Defendants discriminated against Plaintiff by failing to provide these reasonable accommodations and by treating her less favorably than similarly situated non-pregnant

employees.

248. Defendants further discriminated against Plaintiff by subjecting her to adverse actions, including reducing her work hours, disciplining her for alleged infractions, and ultimately terminating her employment shortly after she disclosed her pregnancy and requested accommodations.

249. Defendants' failure to accommodate Plaintiff's pregnancy-related needs and their adverse treatment of her based on her pregnancy and related conditions constitute unlawful discrimination under the NYCHRL.

250. As a result of Defendants' discriminatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## TWENTY-SECOND CAUSE OF ACTION
(Retaliation - Pregnancy)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

251. Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

252. Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to retaliate against an employee for engaging in protected activity, including requesting accommodations related to pregnancy or for complaining about discriminatory treatment.

253. Plaintiff engaged in protected activity when she requested reasonable accommodations for her pregnancy-related conditions, including time off for medical appointments, rest breaks, and the ability to express breast milk.

254. Plaintiff also engaged in protected activity by complaining about the discriminatory treatment she experienced due to her pregnancy.

255. In response to Plaintiff's requests and complaints, Defendants engaged in retaliatory actions, including reducing Plaintiff's work hours, disciplining her without proper justification, and eventually terminating her employment.

256. Defendants' termination of Plaintiff's employment occurred shortly after her requests for accommodations and complaints of discrimination, making clear that the termination was a direct result of her protected activities.

257. Defendants' retaliatory actions violated the NYCHRL, which prohibits retaliation against employees for asserting their rights related to pregnancy accommodations and discrimination.

258.   As a result of Defendants' retaliatory conduct, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## TWENTY-THIRD CAUSE OF ACTION
(Hostile Work Environment – Pregnancy)
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

259.   Plaintiff repeats, re-alleges, and reincorporates every allegation as though fully set forth herein.

260.   Under the New York City Human Rights Law (NYCHRL), it is unlawful for an employer to create a hostile work environment based on pregnancy, childbirth, or related medical conditions.

261.   Plaintiff's pregnancy and related medical conditions, such as morning sickness, edema, and the need to express breast milk, were known to Defendants.

262.   Defendants created a hostile work environment by subjecting Plaintiff to repeated discriminatory and adverse actions due to her pregnancy. This included denying her reasonable accommodations, such as rest breaks, time off for medical appointments, and the ability to express breast milk.

263.   Defendants further isolated and targeted Plaintiff by reducing her work hours, imposing unjustified disciplinary actions, and failing to investigate her complaints of discrimination.

264.   The hostile work environment intensified when Defendants terminated Plaintiff's employment shortly after she requested accommodations for her pregnancy-related medical needs.

265.   Defendants' conduct was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment, making her work environment abusive and intolerable due to her pregnancy.

266.   As a result of Defendants' creation of a hostile work environment, Plaintiff has suffered harm, including economic losses, emotional distress, and other damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiff demands a trial by jury on all questions of fact raised by this Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks all available remedies available under all causes of action listed herein in this Plaintiff and any and all remedies that the Court deems just and proper.

Including but not limited to All lost wages and benefits, front pay, pre-judgment and post-judgment interest; liquidated damages, punitive damages, statutory penalties; emotional distress damages; recovery of reasonable costs, attorney fees, and expenses; equitable relief, and any other relief considered just and proper.

Dated:  White Plains, New York
         October 16, 2024

El-Hag & Associates, P.C

By: *Jordan El-Hag*
                     Jordan El-Hag, Esq.
                     Attorney for Plaintiff
          777 Westchester Ave, Suite 101
                White Plains, N.Y, 10604
                     (914) 218-6190 (p)
                     (914) 206-4176 (f)
                     jordan@elhaglaw.com

29